BUIE et al. v. PENN et al.  (No. 1353.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 23, 1914. On Motion for Re- hearing Jan. 26, 1915.)

1. TRESPASS TO TRY TITLE (§ 41*) — PRIOR POSSESSION—PRIMA FACIE TITLE.

In trespass to try title, prior possession of property in plaintiffs' grantors establishes a .prima facie title sufficient to recover in the ab- sence of rebuttal by defendant.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. § 41.*]

2. TRESPASS TO TRY TITLE (§ 45*)—CONTINU- OUS USE—INSTRUCTION.

In trespass to try title, a charge that, if the land was inclosed by a fence for 10 years, plaintiffs could not recover, unless they assert- ed ownership by "continuous use" thereof for 10 years, was not erroneous because it did not use the words "continuous cultivation, use, or enjoyment" employed in the statute.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 67; Dec. Dig. § 45.*]

3. ADVERSE POSSESSION (§ 19*)—POSSESSION— REQUISITES.

To perfect a title by limitation, the land must not only be inclosed with a fence, but "cul- tivated, used, or enjoyed."

[Ed. Note.—For other cases, see Adverse Pos- session, Cent. Dig. §§ 99-105; Dec. Dig. § 19.*]

4. ADVERSE POSSESSION (§ 24*)—CONTINUOUS POSSESSION.

When "use" of land is relied upon to estab- lish title, it must be continuous.

[Ed. Note.—For other cases, see Adverse Pos- session, Cent. Dig. §§ 114, 115; Dec. Dig. § 24.*]

On Motion for Rehearing.

5. TRESPASS TO TRY TITLE (§ 35*)—PROOF— VARIANCE.

The rule that, when a party specially pleads a title to real estate, he cannot prove any other, does not apply where title by limitation is spe- cially pleaded.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 50-52; Dec. Dig. § 35.*]

6. TRESPASS TO TRY TITLE (§ 38*) — PRIOR POSSESSION—PRIMA FACIE TITLE.

A finding that plaintiffs had no title by limitation does not destroy the presumption of title, raised by proof that their grantors had prior possession of the property.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 53; Dec. Dig. § 38.*]

Appeal from District Court, Rusk County; W. R. Stephen, Judge.

Trespass to try title by D. A. Buie and R. W. Simpson· against D. W. Penn and oth- ers. Judgment for defendants, and plaintiffs appeal. Reversed in part, and remanded.

G. L. Florence and Warren & Briggs, all of Gilmer, for appellants. J. H. Beavers and W. G. Russell, both of Winnsboro, for appel- lees.

HODGES, J. In June, 1913, the appel- lants, Buie and Simpson, instituted this suit

against the appellees in the form of an action of trespass to try title to recover a tract of land described as lying south of the Von Rhoeder survey in Upshur county. The land was shown by the evidence to be a part of the Ridgeway survey. The petition also prayed for an injunction to restrain the defendants from cutting any timber on the land sued for. A title based upon adverse possession for five and ten years was specially pleaded.

The testimony showed that in 1885 this tract of land was claimed by J. L. and W. R. Camp, who at the time owned another large tract situated in the Von Rhoeder survey. Their land on the Von Rhoeder survey was inclosed by a wire fence which extended south and included within the same inclosure the land in controversy in this suit. That the Von Rhoeder survey was occupied by tenants of the Camps and was partly in cultivation, but no part of the Ridgeway tract was occupied by tenants or in cultivation. It is also shown that this land was used during the fall and winter, in common with the rest of the land inclosed, as a pasture for stock. That the stock would be turned out when the time arrived for planting crops in the spring, and remain out till the crops were gathered in the succeeding fall. Some time subsequent to 1885, a man by the name of Holmes acquired an interest from J. L. and W. R. Camp in the land on the Von Rhoeder survey, and seems to have claimed in common with the Camps the ownership of the land in question. In 1895 Buie and Simpson purchased 700 or 800 acres from the Camps and Holmes. The deed described their purchase as being in the Von Rhoeder survey, but at the time they purchased the fence inclosing the land in controversy was pointed out as being the south boundary line of the land sold. There was evidence tending to show that the Camps previous to that time claimed the ownership of the land, and that Buie and Simpson thought it was a part of their purchase. Several years after the purchase by Buie and Simpson their lines were surveyed, and it was then discovered that this particular tract of land was not in the Von Rhoeder survey and was not included in their deed from the Camps and Holmes. The testimony was conflicting as to the extent to which this fence on the south side of the land in controversy was maintained during the time the Camps claimed the land. The appellants offered evidence tending to show that a good substantial wire fence was constructed there in 1885, and that it was kept in good repair continuously for 10 years or more; that occasionally breaks would occur in it by reason of overflows or the falling of timber; but that these were repaired and the fence was depended upon during the greater part of that time to protect the crops grown on the Von Rhoeder survey from the depredations of stock; and that it was suf-ficient, with the exception of the occasional breaks, to hold stock placed therein for pasturage. The appellees offered testimony tending to show that this fence was neglected; that it was permitted to remain down and out of repair for a considerable length of time, and that practically no attention was given towards keeping it in repair for the purpose of holding stock or of excluding stock running on the commons from entering the inclosure. After 1896 the use of this tract of land was practically discontinued and the fence was not kept up.

[1-3] For evidence of title the appellants rely upon proof of the prior possession of the Camps and Holmes, as well as their adverse possession, which, it is claimed, extended over a period of at least 10 years, and the deed from the Camps and Holmes conveying this particular tract of land several months prior to the institution of this suit. The appellees offered in evidence deeds showing a good paper title from the state to an undivided one half interest, the other half interest not having passed from T. C. Gillespie, the original grantee from the state. The court submitted the issue of a title by limitation depending upon adverse possession for a period of 10 years by the Camps and Holmes, and the jury returned a verdict in favor of the appellees for all of the land.

The appellant requested a special charge directing the jury to find for them for at least one-half of the land. This was refused, and that ruling forms the basis of the first group of assigned errors. The request for the charge was predicated upon the prior possession of the Camps and Holmes, with which the appellants connected themselves by the deed from those parties in 1912. That prior possession is sufficient evidence of title to establish a prima facie right of recovery in the plaintiff is now well settled. Randell v. Robinson, 146 S. W. 717, just decided by this court, but not yet officially reported; Watkins v. Smith, 91 Tex. 589, 45 S. W. 560; Boyd v. Miller, 22 Tex. Civ. App. 165, 54 S. W. 411; House v. Reavis, 89 Tex. 629, 35 S. W. 1063. The appellants, having connected themselves with the prior possession of the Camps and Holmes, were, under the facts of this case, entitled to this instruction. It was unnecessary that their possession should be continuous down to the date of the institution of the suit. The fact that it antedated, so far as the evidence disclosed, possession by any other person, was sufficient. Boyd v. Miller, supra.

At the instance of the appellants the court gave the following special charge:

"Gentlemen of the Jury: At the instance of the plaintiffs you are charged that the land was inclosed by a fence, and if the fence was sufficiently substantial to afford a reasonable protection against the stock (cattle and horses) of the neighborhood, then such inclosure, if any, is sufficient to show exclusive and adverse possession of the land, and, although you should find that there was an occasional breaking of

the fence by floods or cutting of the wire by others, by reason of which the cattle and horses of the neighborhood entered upon the land, such would not constitute a break in the possession, unless you should also find that the fence was left in such a condition as that the land was open to the cattle and horses of the public for such a length of time as to justify the belief that J. L. Camp, W. R. Camp, and S. J. Holmes, and after them J. L. Camp and W. R. Camp, did not intend to continue the exclusive appropriation of the same."

In view of this special charge, we think there was no error in refusing the other special charges requested by the plaintiffs of which they complain in other assignments.

At the request of the appellees the court gave the following special charge:

"Gentlemen of the Jury: At the request of defendants, I charge you that if you find by a preponderance of the evidence that the plaintiffs, or those under whom they claim, had the land in controversy inclosed by a wire fence for a period of 10 years prior to the 1st day of January, 1913, that fact would not entitle plaintiffs to recover, unless you find from a preponderance of the evidence that they asserted ownership to same by a continuous use of said inclosure for the full period of ten years."

Appellants complain of the giving of this charge "for the reason that the same was not the law, and they (the jury) were thereby led to believe that, although the land was substantially fenced so as to keep out stock, * * * yet the fact that cattle did not graze this particular land during crop season would interrupt the running of the statute."

[4] We are not prepared to say that the jury would probably draw the conclusions which the appellants urge as possible under this charge. As before stated, there was evidence tending to show a practical abandonment of the use of the land in controversy as a pasture for a considerable length of time. It is not sufficient, in order to perfect a title by limitation, that the land be merely inclosed with a fence. The statute requires that it be "cultivated, used, or enjoyed." McDonald v. McCrabb, 47 Tex. Civ. App. 259, 105 S. W. 238; Buster v. Warren, 35 Tex. Civ. App. 644, 80 S. W. 1063; Niday v. Cochran, 42 Tex. Civ. App. 292, 93 S. W. 1027; Dunn v. Taylor, 102 Tex. 80, 113 S. W. 265; Hutcheson v. Chandler, 47 Tex. Civ. App. 124, 104 S. W. 434. We are not called upon to determine the distinction between the terms "use" and "enjoyment" as employed in the statute. The only character of "use" or "enjoyment" to which the evidence shows this property was applied was the pasturage of cattle; and while this charge is not strictly in accordance with the terms of the statute, by reason of its failure to incorporate the term "or enjoyment" in connection with "use," we do not think the omission operated to the detriment of the appellants in misleading the jury. When use is relied on for title it must be

continuous. We cannot say as a matter of law that even the breaks in the use made of the property by the Camps, as shown by some of the evidence, would not justify the jury in holding that the use was not sufficiently continuous. It was for them to determine, under all the facts, whether or not there had been such a continuous use for the period of at least 10 years.

We have discovered no error which justifies remanding this case for another trial. Under the evidence we have concluded that the appellants were entitled to recover an undivided one-half interest, and judgment to that effect will be here rendered in their favor, as well as costs of this suit.

## On Motion for Rehearing.

Upon further consideration we have concluded that the ends of justice are more likely to be subserved by remanding this case for another trial, instead of here rendering judgment, as had previously been ordered.

[5] Counsel for appellees insist that inasmuch as the appellants specially pleaded a title by limitation, and there being a finding by the jury against them on that evidence of title, they occupy the status of naked trespassers, from whom any joint owner of the premises may recover the possession. This conclusion is predicated upon the proposition that, when a party specially pleads a title to real estate, he cannot prove any other. That rule is not applicable to a pleading which specially sets up a title by limitation. Mayers v. Paxton, 78 Tex. 196, 14 S. W. 568; McAdams v. Hooks, 47 Tex. Civ. App. 79, 104 S. W. 432. The reasons for the distinction are fully discussed in the cases cited. If the restriction invoked does not apply in this case, then the appellants were entitled to the benefit of the presumptions of title resulting from the prior possession of the Camps, with whom they were connected, such as would exist, had they failed to make any special averments as to the basis of their title.

[6] A finding that they had no title by limitation did not destroy the probative effect of this prior possession as prima facie evidence of a paper title. If it had been shown that the appellants in fact had no other claim of title, except that based upon adverse possession, then upon proof of part ownership the appellees would clearly be entitled to recover the entire tract of land. The failure to establish that fact is what prevents an affirmance of the judgment of the court below.

The former judgment of this court will be modified as indicated, and the cause remanded for another trial.