## TAYLOR v. McGEE.  (No. 2766.)*

(Court of Civil Appeals of Texas. Texarkana. June 28, 1923. Rehearing Denied June 28, 1923.)

1. **Parent and child ⊚⟱2(2)—If plaintiff at time of trial was fit to care for child, unfitness in past held no ground for not awarding custody of child to him now.**

   If plaintiff was a proper person at the time of the trial to have the custody of his child, the fact that he was not a proper person in the past *held* not a reason for refusing to award him the custody of the child.

2. **Habeas corpus ⊚⟱85(1)—Presumed best interest of child subserved by awarding it to parent, burden on defendant to prove contrary.**

   It is presumed that the best interest of a child is subserved by awarding it to its parent.

3. **Habeas corpus ⊚⟱85(1)—Evidence held not to overcome presumption that best interest of child would be subserved by awarding custody to father.**

   In habeas corpus proceedings, evidence by defendant grandmother *held* not to overcome presumption that best interest of child would be subserved by awarding it to its father.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Habeas corpus proceeding by H. D. McGee against Mrs. W. B. Taylor. Judgment for plaintiff, and defendant appeals. Affirmed.

This was a habeas corpus proceeding by appellee against appellant to obtain the custody of Monroe Clyde McGee, a boy about 6 years old, who was the son of appellee and the grandson of appellant. The trial court found the facts to be as follows:

Appellee and appellant's daughter, the mother of the boy, were married in 1912. The daughter died in 1921. (The undisputed testimony was, however, that she died January 17, 1920.) Shortly thereafter appellee took the boy from Fort Worth, where the parties lived, to East Texas, and kept him with his (appellee's) brother until along in March, 1921. In the following May appellee left the boy with appellant, and he remained with her until April 28, 1922, when the habeas corpus proceeding was commenced. Appellant was about 50 years of age, and "a very fine woman, honest, upright, and more than willing and able" to properly care for and educate the child. Some 4 or 5 years before the trial, and "before prohibition went into effect," appellant's husband, about 55 years of age, "did quite a bit of drinking intoxicating liquor," but was "an energetic, upright, honest man, and always provided for the support and maintenance of his family to the best of his ability." He earned about $35 a week. Both appellant and her husband were very much attached to the child. Appellee was about 33 years of age. He was living in Dallas with his second wife to whom he was married a few weeks before this proceeding was commenced. He earned about $35 a week. (He testified he earned $30 a week, and there was no testimony showing that he earned more than that.) He was affectionate toward the child, and had "contributed materially to its support and maintenance." "Before prohibition went into effect he was not strong physically, and was a man that did a considerable bit of drinking intoxicating liquor." At the time of the trial he was "a sober, quiet, ambitious, industrious, hard-working man, and was willing and able and desired the custody of the child, in order that he might provide, maintain, educate, love, and care for it." His second wife was about 30 years of age, was "a very fine woman," and declared that "she loved the child," and "if it were given to her would to the best of her ability love, educate, and properly raise it, and give it every opportunity in life that she could afford." "The home life and conditions of the Taylor home and the McGee home were about the same, and the boy had not lived with respondent (appellant) for such a length of time as to have alienated his love and affection for his father, and his father had not willingly consented for respondent to take, raise, and educate said child."

On the facts found by him as stated the court concluded that appellee was entitled to the custody of the child, because he was its natural guardian and "had [not?] surrendered and relinquished his right to its control and custody," and because it did not appear from a preponderance of the evidence that he "was not a fit and proper person to have the care, custody, and control of the child."

---

⊚⟱For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction October 24, 1923.

Hunter, Dalrymple & Stewart, of Fort Worth, for appellant.

Callaway & Shead, of Fort Worth, for appellee.

WILLSON, C. J. (after stating the facts as above). Asserting that it appeared from the testimony "that the best interest and future welfare of the child would be secured and subserved" by awarding the custody thereof to her, appellant insists that this court should reverse the judgment of the court below and should here render judgment awarding her the custody of the child. The contention is on the theory, it seems, that it appeared that appellee, in conformity to the wish of his deceased wife expressed during her last sickness, agreed that appellant might take and rear the child, and further appeared that the findings of the trial court that appellee was a "sober, quiet, industrious, hard-working man," and that his "home life and conditions" were about the same as appellant's, were not warranted by testimony.

The testimony was conflicting as to whether appellee agreed as claimed or not. He testified he did not, and the testimony to the contrary was not strong.

[1] There was testimony showing that "before prohibition went into effect" appellee drank intoxicating liquor to excess and neglected the child and its mother, but the finding of the court that he was a sober, quiet, hard-working man referred to the time of the trial. If appellee was that kind of a man then, the fact that there was a time in the past when he was not a proper person to have the custody of the child was not a reason why the court should have refused to award him the custody thereof.

As to the "home life and conditions" of the respective parties from a material viewpoint, the testimony was that appellee was a "mattress finisher," earned $30 a week, rented the house he lived in, and owned no property except a small quantity of household furniture, and that appellant's husband was a "fruit mixer" in a pie factory, where he earned $35 a week. Whether appellant and her husband owned the house they lived in, and whether they owned any property of any kind, was not shown.

[2, 3] The legal presumption was that the best interest of the child would be subserved by awarding it to its father. Wood v. Deaton, 93 Tex. 243, 54 S. W. 901; Dunn v. Jackson (Tex. Com. App.) 231 S. W. 351; Fasel v. Gunning (Tex. Civ. App.) 249 S. W. 875. The burden was on appellant to prove to the contrary, and that its best interest would be subserved by awarding its custody to her. We think the trial court had a right to say that she had not discharged the burden, and to conclude that appellee was entitled to the custody of the child.

The judgment is affirmed.