appears over the certificate of the trial judge. See Revised Civil Statutes 1925, art. 2237; Thomas v. State, 83 Tex. Cr. R. 325, 204 S. W. 999; Exon v. State, 33 Tex. Cr. R. 461, 26 S. W. 1088; McKnight v. State, 93 Tex. Cr. R. 402, 248 S. W. 377; Anderson v. State, 95 Tex. Cr. R. 350, 254 S. W. 986; Clayborn v. State, 100 Tex. Cr. R. 325, 273 S. W. 260; Lilley v. State, 100 Tex. Cr. R. 375, 273 S. W. 270; Kemp v. State, 106 Tex. Cr. R. 103, 290 S. W. 1097; Plattenburg v. State, 107 Tex. Cr. R. 44, 294 S. W. 549; 22 A. L. R. 270. The remarks last made are designed to make it plain that this court has no choice other than to consider, in connection with the bills found in the record, the qualifying or explanatory statements of the trial court.

The modesty of counsel who by appointment of the court, represented the appellant upon the trial and in this court, has led them to injustice to themselves in assuming that the present situation in which the appellant finds himself is due to any lack of learning or experience upon their part. Having placed upon them as onerous obligation, the record here bears unmistakable testimony to their ability, their skill, their courage, and their fidelity in discharging the painful duty.

We have failed to discover any evidence that the court was coerced, threatened, or in any way influenced by impending mob violence. The appellant's silence upon the trial, on the undisputed evidence touching his mental condition at the time of the trial, appears to have been from choice. If there were matters in his mind of a defensive nature, they were not disclosed by him at the time the motion for new trial was heard.

If, in fact, during the months that have elapsed since the trial of the appellant there has come to light evidence that the haste with which he was brought to trial resulted in depriving him of facts in his favor which have since become available, the Constitution, in its munificence, affords a tribunal with power to relieve him. This court, however, restricted by the rules of law set forth in the statutes and Constitution and by the evidence heard upon the trial, is constrained to overrule the motion for rehearing. It is so ordered.

**CRAIGHEAD et al. v. MEYERS.** (No. 8045.)*

Court of Civil Appeals of Texas. San Antonio. Oct. 17, 1928.

Rehearing Granted Nov. 14, 1928.

Stevenson & Knetsch, of Seguin, and R. J. McMillan, of San Antonio, for plaintiffs in error.

John C. Hoyo and A. J. Wirtz, both of Seguin, for defendant in error.

COBBS, J. The subject-matter of the suit is the custody of a minor child, Claude Newton Meyers, the son of plaintiff in error Mrs. Bessie Craighead, and the grandson of defendant in error, Mrs. Wm. Meyers. The child is the fruit of the marriage between Adolph Meyers, son of defendant in error, and Mrs. Craighead, and was 12 years of age at the time of the entry of the order herein complained of. The plaintiff in error was first married to Adolph Meyers, and has since been married three times, being divorced three times, and was living with her fourth husband at the time of the trial.

Adolph Meyers, as plaintiff, obtained a divorce from plaintiff in error in the district court of Guadalupe county, by decree entered in said court on November 24, 1916, and said court in its decree awarded the care and cus-

tody of said child, Claude Newton Meyers, to the father. Plaintiff in error then married one Matlock and made application to have the decree in the divorce case modified so as to give her the custody of the child. The court entered a temporary order, awarding her the custody of the child pending the final determination of the matter; but it was never finally determined, because plaintiff in error voluntarily appeared and dismissed the suit, thus leaving the matter as fixed by the divorce decree. Matlock shortly afterwards filed a complaint against plaintiff in error and one A. H. Gibson for adultery and then secured a divorce from plaintiff in error, who thereupon married Gibson. Suit was then again brought by plaintiff in error, joined by her husband Gibson, for custody of the child; it appearing as an original suit in the district court of Guadalupe county, and defendant in error Mrs. Wm. Meyers and her husband being parties to the suit. The court entered its decree in that suit on November 24, 1920, awarding the care and custody of the child to Mrs. Meyers and her husband. Under such decree plaintiff in error was given the right to have the child visit her one week out of five, but this was later modified by order of the court on December 20, 1922, so as to permit visits only during the school vacation.

In the fall of the year 1925, the child was permitted to go to his mother in El Paso. At that time plaintiff in error was living with her brother, and he urged defendant in error to permit the child to come out and live with them and attend a session of school, representing that he was married to a fine woman, would properly care for the child in his own home, and would return him when requested. At that time the boy seemed to be infected with malaria, and it was thought a change of climate for a short period might be beneficial. Defendant in error testified that he was permitted to go to El Paso for these reasons alone, and solely on such representations. Shortly afterward plaintiff in error, having been divorced by Gibson, was again married, to her present husband, and removed first to Cisco, then to Abilene, taking the child with her. Defendant in error was not informed that the child had been taken from the home of his uncle in El Paso, but repeatedly wrote to the uncle for the return of the boy. In the fall of the year 1926, the boy's father, Adolph Meyers, was injured in an accident at Corpus Christi, from which injuries he died within a few days. Defendant in error made frantic efforts to locate the child in order to secure his attendance at his father's bedside, and later at the funeral. Through these efforts she learned that the child was with plaintiff in error in Abilene, and wired to plaintiff in error there, requesting that the child be sent to relatives in San Antonio for the purpose of attending his father's funeral, and wiring expense money for that purpose. Plaintiff in error declined to let the child attend the fu-

neral, and returned the money, claiming that the time was too short to permit him to reach Seguin for the funeral. In October of 1926, the judge of the district court of Guadalupe county issued an order directing plaintiff in error to deliver the child into the custody of defendant in error under authority of the former decree, this order being for the purpose of enforcing the former decree, and by virtue thereof the child was eventually returned to defendant in error, and she was appointed guardian of the person and estate of said minor by the county court of Guadalupe county.

Thus the status of affairs when this suit was filed on July 2, 1927, was that the judgment of the court in cause No. 10,532, awarding the custody of the child to defendant in error and her husband, Dr. Wm. Meyers, was still in force, and they had the child in their custody by virtue of such order. This fact was recognized by plaintiff in error, as her petition in this cause was styled and numbered, filed and docketed as cause No. 10,532, and the prayer was for modification of the order in said cause No. 10,532 and to award the custody of the child to her. It was alleged by plaintiff in error that the conditions have materially changed since the original order was entered in cause No. 10,-532, but in what respect it is not stated, and this allegation must be treated as a mere conclusion of the pleader. After fully hearing the evidence, the trial court refused to set aside the original decree in said cause, but only modified it so as to permit the child to visit plaintiff in error for 30 days during vacation in each year. The writ of error was sued out to review this order.

We have become convinced, from reading the testimony, that plaintiff in error, whatever her character and her unsuitableness was at the time this child was passed to the custody of defendant in error, is now shown to have reformed, and her financial condition renders her a proper person to care for her child. The father, Adolph Meyers, died in the fall of the year 1926, leaving the mother of the child surviving. She is now married and living with her husband, N. J. Craighead, in the city of El Paso, and is the owner of a well-equipped, modern home located in a desirable community in the immediate proximity of good schools and churches and is able financially to care for the child, and she, herself, is a fit and proper person morally to have the custody of her said minor child.

It is well established that the welfare of the child is the paramount consideration, and this rule has often been announced and reiterated by our Supreme Court. See Haymond v. Haymond, 74 Tex. 414, 12 S. W. 90; Rice v. Rice, 21 Tex. 58; Legate v. Legate, 87 Tex. 248, 28 S. W. 281; Dunn v. Jackson (Tex. Com. App.) 231 S. W. 351. In the case last cited the opinion of the Commission of Appeals had the specific approval of the Su-

preme Court. We quote from that opinion as follows:

"The [trial] court recognizes that the welfare of the child is the sole criterion in determining her custody, but because it was not shown that the parent was an improper person, indulged the presumption, in disregard of the evidence as to the best interests of the child, that her best interest would be best served by being in the custody of the parent. The effect of this holding was to utterly ignore, as immaterial to a decision of the cause, the expressed wishes of the child, who was nearly 14 years of age at the time she testified, to remain with her grandmother, the strong attachment she had formed for her grandmother in response to the affection bestowed upon and care taken of her by the grandmother and the severing of ties formed during the most impressionable period of her life, by taking her from the only home she had ever known and placing her in a home whose inmates she had no more affection for than if they were rank strangers.

"These things were matters of vital importance in determining the important question of fact as to whose custody would be most beneficial to the child's interest; and the evident failure to consider them, coupled with the court's requirement that respondent prove the relator an improper person to educate and rear the child, necessitate, we think, a reversal of the cause."

 The suit was instituted by the mother to obtain the custody of the child from the grandparents, into whose hands the custody had been placed by the district court, and over whose person the county court had given defendant in error the guardianship. The burden was not on defendant in error to show the unfitness of plaintiff in error, but the burden was on her to show such reformation as entitled her to the custody of the boy. The parent, if fit, is the best person to award the child to. But surely, above all, the mother is the logical person, if she be a proper person to have its custody.

The mother testified that she did not want certain insurance money, inherited by the minor from his deceased father, placed in her hands, but would prefer that it be placed in the hands of a trustee to be invested and kept for the boy, Claude, until he reached his majority. She expressed a desire and willingness to take care of her son out of her own funds, without cost to him. On the other hand, the grandmother had some time before the trial applied to the county court of Guadalupe county for the guardianship of the property of Claude Meyers, and stated that she was not financially able to support the boy, and prayed that the sum of $30 a month be set apart out of the insurance money to her for support of the boy. The facts would seem to indicate that the maternal love of Mrs. Craighead was stronger than the affection of the grandmother, and that she wanted her boy uninfluenced by any desire for gain or pecuniary benefit. The fact that the grandmother applied for the sum of $30 a month, under the plea of inability to properly support the boy, evidenced, either that she was financially unable to care for and educate him, or that she desired to obtain from him the small pittance left him by his father, although she had sufficient means to maintain and support him. The facts narrated tend to show that the welfare of the minor will be better conserved by placing him in the custody of a mother interested in him for his sake alone, rather than in the hands of a grandmother who is making no sacrifices for him but absorbing his small inheritance.

In decreeing this child to defendant in error, the court, for the reasons stated, erred, and the judgment of the trial court is reversed and judgment here rendered awarding the custody of the child to plaintiff in error with costs.

### On Motion for Rehearing.

While we do not care to modify in the least, or in any way change, our opinion, still under the case of Greenlaw v. Dilworth (Tex. Com. App.) 299 S. W. 875, we think we have gone too far in rendering the judgment, which the court in the Dilworth Case says to be coram non judice, and hence withdraw that part of the judgment in rendering the same, and now simply reverse the judgment and remand the case for another trial.

Reversed and remanded.